**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| **DR PEPPER/SEVEN UP, INC.** | § | |
| | § | |
| ***Plaintiff,*** | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO._____________** |
| | § | |
| **BOTTLING GROUP, LLC d/b/a** | § | |
| **THE PEPSI BOTTLING GROUP,** | § | |
| | § | |
| ***Defendant.*** | § | |

---

**PLAINTIFF'S ORIGINAL VERIFIED COMPLAINT AND APPLICATION FOR TEMPORARY AND PERMANENT INJUNCTION**

---

Plaintiff Dr Pepper/Seven Up, Inc. ("Plaintiff" or "Dr Pepper") files this Original Verified Complaint and Application for Temporary and Permanent Injunction against Defendant Bottling Group, LLC d/b/a The Pepsi Bottling Group ("Defendant" or "Pepsi") and hereby alleges as follows:

## I. PARTIES

1. Plaintiff Dr Pepper/Seven Up, Inc. is a corporation organized and existing under the laws of the State of Delaware. Its principal place of business is in Plano, Texas. Accordingly, Plaintiff Dr Pepper/Seven Up is a Delaware and Texas citizen for purposes of diversity jurisdiction.

2. Defendant Bottling Group, LLC d/b/a The Pepsi Bottling Group is a limited liability company organized and existing under the laws of the State of Delaware. Its principal place of business is at 1111 Westchester Ave, White Plains, New York 10604. Upon information and belief, the sole member of Defendant Bottling Group, LLC is PepsiCo, Inc. (a publicly traded corporation of which Defendant Bottling Group, LLC is a wholly-owned subsidiary). Upon

information and belief, PepsiCo, Inc. is a corporation organized and existing under the laws of the State of North Carolina with its principal place of business located in Purchase, New York. Accordingly, upon information and belief, Defendant Bottling Group, LLC is a North Carolina and New York citizen for purposes of diversity jurisdiction.  Defendant Bottling Group, LLC may be served with process by serving its Texas registered agent C T Corporation System 1999 Bryan St., Ste. 900, Dallas, TX 75201-3136.

## II.   JURISDICTION & VENUE

3. This Court has subject-matter jurisdiction over this lawsuit pursuant to 28 U.S.C. 1332(a) because the parties are citizens of different States and the amount in controversy, exclusive of interest and costs, exceeds the sum of $75,000.

4. Venue is proper in the Eastern District of Texas and this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in Collin County, Texas.

5. Venue is required in the Eastern District of Texas because the license agreement dated February 12, 2010 between the parties establishes venue for any dispute between the parties under or in connection with the license agreement "shall be brought in the state or federal courts of competent subject matter jurisdiction in Collin County, State of Texas or the United States District Court for the Eastern District of Texas . . .".

6. This Court has authority to issue injunctive relief under Rule 65 of the Federal Rules of Civil Procedure, and its inherent equitable powers.

## III.	FACTUAL BACKGROUND

### A.  Dr Pepper and Pepsi Enter into a Licensing Agreement

7.	Dr Pepper is a Plano, Texas-based soft drink manufacturing company. Dr Pepper serves consumers throughout North America and is the owner of several beverage brands including, but not limited to, the iconic clear, lemon-lime flavored carbonated "7UP" soft drink. Dr Pepper licenses various of its soft drink brands, including 7UP, to third parties to manufacture, distribute and sell the finished beverage in a specified territory.

8.	Pepsi is a New York-based company that manufactures, markets, and distributes Pepsi-Cola beverages and holds the rights to manufacture, sell, promote, and distribute various other beverages including, but not limited to, certain beverage brands owned by Dr Pepper.

9.	On February 12, 2010, after extensive negotiations, Dr Pepper and Pepsi entered into a license agreement (the "Agreement").

10.	Pursuant to the Agreement, Dr Pepper granted Pepsi an exclusive license to sell and distribute certain "Beverages" solely within the "Territory" described in the Agreement; subject to certain requirements and restrictions.

11.	The Territory for each Beverage is varied and is not identical.

12.	Dr Pepper also authorized Pepsi to use certain "Trademarks" in connection with the manufacture, sale, promotion, and distribution of the Beverages.

13.	The term of the Agreement is twenty years with renewal periods specified in the Agreement.

14.	The Beverages licensed include the iconic clear, lemon-lime flavored carbonated "7UP" soft drink.

15. The Territory for the 7UP soft drink includes over 70 counties in Texas (the "7UP Territory").[1]

16. Through an investment of substantial resources and time, Dr Pepper has developed the 7UP beverage into an iconic and powerful brand.

17. The value of 7UP's brand is difficult to measure. Likewise, injury, negative impact, and dilution of 7UP's brand power is difficult to measure.

18. Any injury, negative impact, and dilution of 7UP's brand power would result in irreparable harm to Dr Pepper.

**B. Pepsi Agrees It Cannot Distribute, Promote, Advertise, Sell, or Offer to Sell Similar Soft Drinks in the Territory**

19. In exchange for the valuable licensing and trademark rights in the Agreement, Pepsi agreed to certain restrictions. Among those restrictions, Pepsi agreed to refrain from selling soft drinks similar to those licensed by Dr Pepper — as determined by Dr Pepper in good faith — in the designated Territories.

20. More specifically, pursuant to Section 5.0 of the Agreement entitled "Similar Soft Drinks," Pepsi agreed that:

> Licensee [Pepsi] shall not, as determined by Licensor [Dr Pepper] in good faith, directly or indirectly distribute, promote advertise, sell or offer for sale within the Territory: (a) any soft drink or beverage of the same or substantially the same characteristics and flavor designation as the Beverages, whether in Authorized Containers or otherwise . . .

[1] The 7UP Territory includes the following counties in Texas: Andrews, Archer, Baylor, Borden, Brewster, Briscoe, Brown, Callahan, Childress, Clay, Coke, Coleman, Collingsworth, Comanche, Concho, Cottle, Crane, Crockett, Culberson, Dawson, Dimmit, Eastland, Ector, Edwards, Fisher, Foard, Glasscock, Hall, Hardeman, Haskell, Howard, Irion, Jeff Davis, Jones, Kent, King, Kinney, Knox, La Salle, Loving, Martin, Maverick, McCulloch, Midland, Mitchell, Montague, Nolan, Pecos, Presidio, Reagan, Real, Reeves, Runnels, Schleicher, Scurry, Shackelford, Stephens, Sterling, Stonewall, Sutton, Taylor, Terrell, Throckmorton, Tom Green, Upton, Uvalde, Val Verde, Ward, Webb, Wichita, Wilbarger, Winkler, Zapata, Zavala, and Bandera (town of Vanderpool only).

21. Pursuant to Section 5.1, Pepsi agreed that “neither it nor its Affiliates will acquire or hold, directly or indirectly, any ownership interest in any person that engages within the Territory in any of the activities prohibited under Section 5.0.”

22. In other words, Dr Pepper agreed to appoint Pepsi as the *exclusive* bottler/distributor for 7UP in the 7UP Territory in exchange for Pepsi agreeing that 7UP would be the exclusive lemon-lime soft drink sold by Pepsi in the 7UP Territory.

23. Pursuant to Section 18.2 of the Agreement, “in the event of any breach of any obligations of [Pepsi] under this Agreement, [Dr Pepper] shall be entitled to give notice to [Pepsi] of its intention to terminate this Agreement, setting forth the reasons for the termination and providing that [Pepsi] has sixty (60) days from the date on which such notice was given in which to cure the deficiencies specified therein.” “If all such deficiencies are not cured to [Dr Pepper’s] reasonable satisfaction by the end of such sixty (60) day period, the notice of termination shall become final without further notice, and this Agreement shall immediately and automatically terminate.”

24. If the Agreement is terminated for any reason, Section 20.1 of the Agreement provides Dr Pepper “the additional right, at its option, to immediately terminate the Sunkist License [Agreement].”

### C. Pepsi Breaches the Agreement by Selling Mtn Dew Ice in the 7UP Territory

25. Recently, and in contravention of Section 5.0 of the Agreement, Pepsi began selling a new clear, lemon-lime carbonated soft drink, Mtn Dew Ice, in the 7UP Territory.

26. Pepsi is aggressively advertising and promoting Mtn Dew Ice in the 7UP Territory.

27. Mtn Dew Ice has the same or substantially the same characteristics and flavor designation as 7UP.

28. For example, even a cursory look at the respective packaging indicates that these beverages have the same or substantially the same characteristics and flavor designations:

 

 

NEW
mtn dew
ICE
LEMON LIME
WITH A SPLASH OF REAL JUICE
12

12 PACK
7UP
LEMON LIME
FLAVORED SODA
CAFFEINE FREE
12-12 FL OZ CANS

29. Both soft drinks prominently feature their clear, lemon-lime flavor and characteristics.

30. Both soft drinks are clear.

31. Both soft drinks are carbonated.

32. Both soft drinks have a lemon-lime flavor.

33. Both beverages fall within the lemon-lime flavored carbonated soft drink category.

34. In short, Mtn Dew Ice has the same or substantially the same characteristics and flavor designation as 7UP.

35. Pursuant to Section 5.0 of the Agreement, Dr Pepper determined in good faith that Mtn Dew Ice has "the same or substantially the same characteristics and flavor designation as" 7UP.

36. Accordingly, Pepsi is in breach of the Agreement.

37. Dr Pepper notified Pepsi of its breach. In response, Pepsi contends it is not in breach of the Agreement and refuses to stop selling, distributing, advertising, and promoting Mtn Dew Ice in the 7UP Territory.

38. Thereafter, Dr Pepper again notified Pepsi of its breach and, separately, Dr Pepper's intention to terminate the Agreement pursuant to Section 18.2 if Pepsi did not cure the breach in sixty days. Dr Pepper also notified Pepsi of its intention to terminate the Sunkist License Agreement pursuant to Section 20.1 upon termination of the Agreement.

39. Therefore, the parties have a dispute as to whether Pepsi is in breach of Section 5 of the Agreement.

40. Pursuant to Section 18.2, Dr Pepper is entitled to terminate the Agreement due to Pepsi's breach if Pepsi fails to cure to Dr Pepper's reasonable satisfaction. In addition, pursuant to Section 20.1 of the Agreement, Dr Pepper is entitled to immediately terminate the "Sunkist License Agreement" if the Agreement is terminated for any reason.

## IV. CAUSES OF ACTION

### A. Declaratory Judgment

41. Dr Pepper incorporates the preceding paragraphs as if fully set forth herein.

42. There is a justiciable controversy about the parties' rights and obligations under the Agreement, including without limitation, whether Pepsi is in breach of the Agreement due to its sale, distribution, advertising, and promotion of Mtn Dew Ice in the 7UP Territory and whether, as a result, Dr Pepper is entitled to terminate the Agreement and the Sunkist License Agreement pursuant to Sections 18.2 and 20.1, respectively, due to Pepsi's failure to cure.

43. A declaration as to the rights and status of the parties' rights and obligations with respect to Pepsi's obligations under the Agreement would resolve this controversy.

44. This Court may make the declarations sought herein with respect to the rights and other legal relations of the parties pursuant to 28 U.S.C. § 2201 and applicable law.

45. Accordingly, Dr Pepper is entitled to appropriate declaratory relief. Specifically, Dr Pepper is entitled to a declaration that Dr Pepper determined in good faith that Mtn Dew Ice has "the same or substantially the same characteristics and flavor designation as" 7UP and, therefore, Pepsi is in breach of Section 5 of the Agreement due to its sales, distribution, advertising, and/or promotion of Mtn Dew Ice in the 7UP Territory.

46. In addition, Dr Pepper is entitled to a declaration that due to this breach and failure to cure by Pepsi Dr Pepper is entitled to terminate the Agreement and the Sunkist License Agreement pursuant to Sections 18.2 and 20.1, respectively.

**B. Breach of Contract**

47. Dr Pepper incorporates the preceding paragraphs as if fully set forth herein.

48. Dr Pepper has fully performed its contractual obligations; Pepsi, however, has not.

49. Pepsi's non-performance of the terms of the Agreement constitutes a breach of the Agreement.

50. As a result of Pepsi's non-performance and breach, Dr Pepper has incurred damages including, but not limited to, having to retain the undersigned attorneys.

51. Under applicable law, Pepsi is obligated to pay all reasonable and necessary attorney's fees and costs associated with the recovery of damages caused by Pepsi's breach of contract.

52. Dr Pepper is entitled to injunctive relief and monetary damages.

53. In addition to monetary damages, the breaches of Pepsi have been willful and intentional and have caused and, unless enjoined, will continue to cause irreparable harm for which there exists no adequate remedy of law.

**C. Texas Common Law Unfair Competition**

54. Dr Pepper incorporates the preceding paragraphs as if fully set forth herein.

55. The conduct of Pepsi described above constitutes business conduct that is contrary to honest practice in commercial matters under Texas law and/or a proper extension of Texas law.

56. For example, Dr Pepper agreed to appoint Pepsi as the *exclusive* bottler/distributor for 7UP in the 7UP Territory in exchange for Pepsi effectively agreeing that 7UP would be the

exclusive lemon-lime soft drink sold by Pepsi in the 7UP Territory. Nevertheless, Pepsi has started selling, and aggressively promoting, a lemon-lime soft drink, Mtn Dew Ice, in the 7UP Territory.

57. Pepsi has gained an unfair advantage in the market by capitalizing on Dr Pepper's prospective business opportunities, which it has misappropriated for its own illicit use. In addition, Pepsi has harmed Dr Pepper in order to benefit itself. Pepsi's conduct and acts constitute unfair competition.

58. Pepsi's acts were willful and they have caused Dr Pepper damage. Dr Pepper is entitled to injunctive relief, actual damages, and punitive damages.

**D. <u>Common Law Unjust Enrichment</u>**

59. Dr Pepper incorporates the preceding paragraphs as if fully set forth herein.

60. Pepsi obtained benefits, and continues to obtain benefits, from Dr Pepper by the taking of an undue advantage. This includes, but is not limited to, profits, publicity, and other benefits from the sale of Mtn Dew Ice in the 7UP Territory.

61. Pepsi's actions have caused and continue to cause injury to Dr Pepper.

62. Allowing Pepsi to keep the amounts and benefits referenced above would be an unjust enrichment.

63. Under Texas law, Pepsi must restore the benefits and amounts obtained.

**E. <u>Imposition of Constructive Trust</u>**

64. Dr Pepper incorporates the preceding paragraphs as if fully set forth herein.

65. As described herein, Pepsi has obtained property, benefits, and monies as a result of its breaches of contract, improper actions, and unjust enrichment.

66. Dr Pepper respectfully requests that the Court order a constructive trust on this property, the benefits, and the monies. This includes, but is not limited to, all property, assets, and monies Pepsi received as a result of the sale of Mtn Dew Ice in the 7UP Territory.

**F. Application for Temporary and Permanent Injunctive Relief**

67. Dr Pepper incorporates the preceding paragraphs as if fully set forth herein.

68. Pepsi's improper sale of Mtn Dew Ice in the 7UP Territory has caused substantial harm to Dr Pepper, and will continue to cause immediate and irreparable harm, loss and damages to Dr Pepper.

69. Dr Pepper is suffering and will continue to suffer immediate and irreparable harm as a proximate result of Pepsi's actions. More specifically, because Mtn Dew Ice is a brand-new product and 7UP's brand is iconic and powerful, Dr Pepper could incur a tremendous amount of damages and loss of business opportunities as a result of the injury, negative impact, and dilution of its brand and the improper competition.

70. Dr Pepper has no adequate remedy at law. In particular, monetary damages would be inadequate because, in the absence of injunctive relief, complete recovery would be difficult, if not impossible, due to the number of counties and business opportunities involved and the injury to 7UP's brand. Monetary damages are also not an adequate remedy because they would be difficult to ascertain. Furthermore, irreparable injury would ensue in the absence of injunctive relief.

71. There is a strong probability that Dr Pepper will succeed on the merits of its case.

72. Due to the difficulty in measuring damages incurred, there is no adequate remedy at law and injunctive relief is required to preserve the status quo, adequately limit Dr Pepper's damages, and prevent future injury. In fact, injunctive relief is likely the only effective remedy.

73. Accordingly, pursuant to 28 U.S.C. § 2201 et seq., Rule 65 of the Federal Rules of Civil Procedure, TEXAS RULE OF CIVIL PROCEDURE 680 *et seq.*, TEXAS CIVIL PRACTICE & REMEDIES CODE § 65.011, applicable law, and/or the Court's inherent equitable powers, Dr Pepper seeks injunctive relief against Pepsi to prevent Pepsi from continuing to breach the Agreement and sell, promote, advertise, and distribute Mtn Dew Ice within the 7UP Territory.

74. Dr Pepper is ready and willing to post an appropriate bond in support of the temporary injunction.

## V.   ACCOUNTING

75. Dr Pepper incorporates the preceding paragraphs as if fully set forth herein.

76. Dr Pepper requests that the Court order an accounting by Pepsi of all benefits received as a result of the actions described herein including, but not limited to, all profits obtained as a result of the sale of Mtn Dew Ice in the 7UP Territory on a continuing basis until such actions are stopped.

## VI.   ATTORNEYS' FEES, COSTS, AND EXPENSES INCURRED

77. Dr Pepper incorporates the preceding paragraphs as if fully set forth herein.

78. Dr Pepper is entitled to recover the full amount of its reasonable attorneys' fees costs, and expenses incurred in pursuing its claims in this action pursuant to Texas Civil Practice and Remedies Code §§ 37.001 and 38.001 *et seq*, Federal Rule of Civil Procedure 54, applicable law, and/or a proper extension of applicable law.

79. Dr Pepper requests an award of reasonable attorneys' fees, expenses, and costs incurred.

## VII.   EXEMPLARY/PUNITIVE DAMAGES

80. Dr Pepper incorporates the preceding paragraphs as if fully set forth herein.

81. Dr Pepper also brings this suit for recovery of an award of punitive or exemplary damages against Pepsi. Since Pepsi's conduct has been willful, Dr Pepper is entitled to exemplary damages.

## VIII. JURY DEMAND

82. Plaintiff Dr Pepper demands a trial by jury on all claims for which the law provides a right to jury trial.

## IX. CONDITIONS PRECEDENT

83. All conditions precedent to the contract or claims alleged in this case have been performed, excused, waived or otherwise satisfied as required by applicable law including, but not limited to, the presentment of attorneys' fees claim.

## PRAYER & SUMMARY OF RELIEF REQUESTED

WHEREFORE, PREMISES CONSIDERED, Plaintiff Dr Pepper respectfully prays that the Court:

1. Enter a judgment for Plaintiff Dr Pepper for damages in excess of $1,000,000, including actual, consequential, incidental, and punitive damages, plus pre- and post-judgment interest.

2. Enter a temporary and permanent injunction enjoining Defendant Pepsi from selling, promoting, advertising, and/or distributing Mtn Dew Ice in the 7UP Territory.

3. Enter a declaration that the sale, distribution, promotion, and advertisement of Mtn Dew Ice in the 7UP Territory is a breach of Section 5 of the Agreement.

4. Enter a declaration that Dr Pepper is entitled to terminate the Agreement and the Sunkist License Agreement due to Pepsi's breach and failure to cure to Dr Pepper's reasonable satisfaction.

5. Disgorge all profits obtained as a result of the actions and misconduct referenced herein including, but not limited to, profits from the sale of Mtn Dew Ice in the 7UP Territory.

6. Place a constructive trust on all of the benefits, property, and monies obtained by Pepsi as described herein including, but not limited to, profits from the sale of Mtn Dew Ice in the 7UP Territory.

7. Order an accounting.

8. Award Plaintiff Dr Pepper all expenses incurred in bringing these claims, including without limitation reasonable attorneys' fees and costs.

9. Award Plaintiff Dr Pepper such other and further relief, both special and general, at law or in equity, to which they may show themselves to be justly entitled.

DATED:  March 6, 2018                    Respectfully submitted,


                                         */s/ John T. Cox III*
                                         John T. Cox III
                                         State Bar No. 24003722
                                         tcox@lynnllp.com
                                         Andrew S. Hansbrough
                                         State Bar No. 24094700
                                         ahansbrough@lynnllp.com
                                         **LYNN PINKER COX & HURST, LLP**
                                         2100 Ross Avenue, Suite 2700
                                         Dallas, Texas 75201
                                         Telephone: (214) 981-3800
                                         Facsimile: (214) 981-3839

                                         **ATTORNEYS FOR PLAINTIFF DR PEPPER/SEVEN UP, INC.**
                                         4820-1557-7183, v. 1